IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| VANCE WALZIER, § | |
| TDCJ-CID NO. 709706, § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-06-2361 |
| § | |
| LT. MCMULLEN, *et al.*, § | |
| Defendants. § | |

OPINION ON PARTIAL DISMISSAL

Vance Walzier, a state inmate proceeding *pro se,* filed a civil rights complaint pursuant to 42 U.S.C. § 1983. (Docket Entry No.1). Plaintiff seeks injunctive relief and compensatory damages. (Docket Entry No.1). For the reasons to follow, the Court will dismiss plaintiff's claims against defendants Janicek, Thomas, Moore, and Stansbury, and retain his claims against Lt. McMullen.

I. BACKGROUND

Plaintiff reports the following events, which he claims gave rise to the pending civil rights complaint: On October 7, 2003, plaintiff, who was incarcerated on the Ferguson Unit of TDCJ-CID, filed a series of grievances against Lt. McMullen for accusing plaintiff of a frivolous disciplinary violation and for attempting to solicit information about other inmates and officers from plaintiff in September, 2003. (Docket Entry No.1, Part 2; Docket Entry No.10). Plaintiff complained to Warden Janicek about McMullen's retaliation and harassment while plaintiff was still in pre-hearing detention pending a disciplinary hearing, but Janicek was not responsive to his complaints. (*Id.*).

Because plaintiff refused to "snitch" on other inmates about a disciplinary violation, McMullen spread vicious rumors about plaintiff. (Docket Entry No.1, Part 2, Docket Entry No.10).

Consequently, plaintiff became the target of verbal and physical abuse from other inmates and eventually was sent to administrative segregation in March, 2004, after engaging in an altercation with another inmate. (Docket Entry No.1, Part 2). While plaintiff was in administrative segregation, Lt. McMullen authorized plaintiff's transfer to different cell blocks. On each move, the guards would announce cell to cell that an informant was being moved to the block. (*Id.*). During this time, plaintiff began to get sick after eating his meals. (*Id.*). On several occasions, he overheard guards and other inmates brag that they had contaminated his food with bodily fluids infected with Hepatitis C ("HCV") or Acquired Immunodeficiency Syndrome ("AIDS"). (*Id.*). Plaintiff eventually refused to eat or to leave his cell. (*Id.*).

In October, 2004, plaintiff requested to be tested for HCV after he became violently ill. (Docket Entry No.1, Part 1). Before receiving the results of the test, he was transferred to the Gib Lewis Unit. (*Id.*). Once on the new unit, plaintiff again became violently ill and requested information about his test result and to be seen by a physician. (*Id.*). Before the examination, an unnamed sergeant spoke to the physician's assistant ("PA") for twenty-to-thirty minutes. (Docket Entry No.1, Part 2). The PA would occasionally glance at plaintiff with an expression of concern, such that plaintiff and the guard thought they were talking about plaintiff. (*Id.*). Eventually, plaintiff was seen by Dr. Clarence Thomas, or PA Moore,[1] who told him that his test results were negative. (*Id.*; Docket Entry No.10). Thomas or Moore, however, ignored all of plaintiff's symptoms of HCV and refused to re-test plaintiff. (Docket Entry No.1, Part 2). Plaintiff filed a grievance against Thomas, who told investigators that he had diagnosed plaintiff with heartburn.

---

[1] Plaintiff indicates in his more definite statement that he is unsure which medical provider examined him. (Docket Entry No.10).

(*Id.*). Plaintiff filed more grievances, seeking additional testing, but was transferred to the Connally Unit in July, 2005, before receiving a response.[2] (*Id.*).

At some point, plaintiff reviewed his medical records. He discovered that he had been misinformed that re-tests for HCV and AIDS had been conducted. He also noticed that some of his enzyme levels were abnormal. (*Id.*).

At the Connally Unit, plaintiff sought a re-test and a chest x-ray or anything to check for signs of liver inflammation. (*Id.*). His requests were denied. (*Id.*). Plaintiff was seen by two nurses and Dr. Stansbury. (Docket Entry No.1, Part 1, Docket Entry No.10). Stansbury acknowledged that some of Plaintiff's enzyme levels were abnormal but refused to re-test him because "his chart show[ed him] to be healthy." (Docket Entry No.1, Part 1). Plaintiff was later tested for blood in his feces but the results were negative. (*Id.*). Plaintiff reports that his medical records show a drop in white blood cell count and other indicators that are close to being outside the normal range for a healthy person. (*Id.*).

Plaintiff seeks injunctive relief and compensatory damages on the following grounds:

1. Lt. McMullen retaliated against plaintiff for filing grievances by creating a hostile environment, which led to plaintiff being infected with a virus from tainted food;

2. Warden Janicek denied him access to the courts by refusing to investigate plaintiff's complaints against McMullen and by depriving plaintiff of an accurate record by which to process his claims in federal court;

3. Dr. Clarence Thomas or PA Moore and Dr. Stansbury were deliberately indifferent to plaintiff's serious medical needs by failing to properly diagnose and treat his illnesses;

---

[2] In his more definite statement, plaintiff states that he was scheduled for another HCV test and an HIV test but the tests were cancelled. (Docket Entry No.10).

      4.      Plaintiff has suffered cruel and unusual punishment as a result of his food being contaminated;

      5.      Plaintiff has been subjected to psychological duress, which led to psychiatric treatment; and,

      6.      Plaintiff has been denied due process because his medical providers have refused to provide adequate medical testing to detect a chronic illness.

(Docket Entry No.10).

## II. STANDARD OF REVIEW

The complaint in this case is governed by the Prison Litigation Reform Act ("PLRA"). Because plaintiff is a prisoner who proceeds *in forma pauperis*, the PLRA requires that the district court scrutinize the basis of the complaint, and, if appropriate, dismiss the case at any time without service of process if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 42 U.S.C. 28 U.S.C. § 1915(e)(2)(B); *see also* 42 U.S.C. § 1997(e)(c) and 28 U.S.C. § 1915A(b). In conducting that analysis, a prisoner's *pro se* pleading is reviewed under a less stringent standard that those drafted by an attorney and is entitled to a liberal construction that includes all reasonable inferences, which can be drawn from it. *Haines v. Kerner*, 404 U.S. 519 (1972); *Alexander v. Ware*, 714 F.2d 416, 419 (5th Cir. 1983).

A complaint may be dismissed as frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges violation of a legal interest which clearly does not exist." *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) (citing *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998)). A review for failure to

state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard used to review a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002). Under that standard, courts must assume that plaintiff's factual allegations are true, and a dismissal is proper only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations. *Id.* (citations omitted).

II. DISCUSSION

A.  Medical Providers

Plaintiff complains that medical providers at the Gib Lewis and Connally Units of TDCJ-CID refused to diagnose and treat him for HCV and AIDS in violation of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment.

The Eighth Amendment prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The plaintiff must prove objectively that he was exposed to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The plaintiff must also show that prison officials acted or failed to act with deliberate indifference to that risk. *Id.* at 834. The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that prison officials knew of and disregarded an excessive risk to the inmate's health or safety. *Id.* at 837; *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837-38. An official is deliberately indifferent if (1) he was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) he actually

drew that inference; and (3) his response indicates the official subjectively intended that harm occur. *Thompson v. Upshur*, 245 F.3d 447, 458-59 (5th Cir. 2001).

"[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38. A prison official who actually knew of a substantial risk to inmate health or safety may be found free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted. *Id.* at 844. Whether a prison official had the requisite knowledge of a substantial risk is a question of fact, which may be inferred from the obviousness of the risk. *Id.*

Deliberate indifference to serious medical needs may be manifested by prison doctors in their response to the prisoner's needs in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle*, 429 U.S. at 104-05. Delay in obtaining medical treatment does not constitute deliberate indifference unless it is shown that the delay resulted in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Mere negligence, however, does not constitute a section 1983 cause of action. *Estelle*, 429 U.S. at 106; *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000) ("the subjective intent to cause harm cannot be inferred from a ... failure to act reasonably"). An inmate's dissatisfaction with the medical treatment he receives does not mean that he suffered deliberate indifference. *Norton v. Dimazana*, 122 F.3d 286, 291-92 (5th Cir. 1997). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the [prohibited conduct]." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Plaintiff's pleadings indicate that plaintiff manifested physical symptoms, which he alone construed to be HCV or AIDS. Plaintiff's pleadings also reflect that over a two-year period he was

tested for HCV and the Human Immunodeficiency Virus ("HIV") at the Ferguson Unit, tested for HCV at the Gib Lewis Unit, and tested for blood in his feces at the Connally Unit. All of the tests results were negative. Plaintiff's pleadings further reflect that plaintiff was seen by medical personnel at each unit but no one diagnosed plaintiff with HCV, AIDS, or any other chronic disease. Plaintiff was informed that his tests were negative and his medical records showed him to be healthy. Plaintiff does not indicate in any of his pleadings that he has been diagnosed with any chronic disease.

Although plaintiff's pleadings reflect his disagreement and dissatisfaction with the medical treatment that he received, they do not reflect an Eighth Amendment claim. S*ee Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991) (holding inmate's "disagreement with his medical treatment" not sufficient to show Eighth Amendment violation). Plaintiff's pleadings show that if plaintiff was exposed to HCV and HIV during his incarceration at the Ferguson Unit, the failure of medical personnel at the Gib Lewis and Connally Units to detect such diseases, amounted to, at most, negligence, which is not actionable under section 1983. *See Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979) (finding "[m]ere negligence, neglect or medical malpractice is insufficient" to show Eighth Amendment violation). Accordingly, plaintiff's Eighth Amendment claims against Drs. Thomas and Stansbury, and PA Moore are legally frivolous and subject to dismissal.

Plaintiff further fails to state a cognizable claim under the Fourteenth Amendment with respect to the denial of medical care. The constitutional rights of a convicted state prisoner, like plaintiff, are based on the Eighth Amendment's prohibition on cruel and unusual punishment while the constitutional rights of a pre-trial detainee flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment. *Hare v. City of Corinth*, *Miss.*, 74 F.3d 633, 639

(5th Cir. 1996). Because the Fourteenth Amendment does not afford plaintiff any protection to medical care, his claims against defendants Thomas, Moore, and Stansbury, are legally frivolous and subject to dismissal.

Finally, to the extent that plaintiff contends that medical personnel at each unit conspired to deprive him of adequate medical treatment, plaintiff fails to state a viable claim. To establish a § 1983 cause of action based upon conspiracy, a plaintiff must do more than make blanket allegations of conspiracy. *Arsenaux v. Roberts*, 726 F.2d 1022, 1023-24 (5th Cir. 1982). He must allege facts that, liberally construed, establish (1) defendants' participation in a conspiracy involving state action, and (2) a deprivation of his civil rights in furtherance of the conspiracy by a party to the conspiracy. *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds by Martin v. Thomas*, 973 F.2d 449 (5th Cir. 1992). Plaintiff must also show that the conspirators had an agreement to commit an illegal act, which resulted in the plaintiff's injury. *Arsenaux*, 726 F.2d at 1024; *Thomas v. City of New Orleans*, 687 F.2d 80, 83 (5th Cir. 1982).

Plaintiff states no facts in any of his pleadings to show that defendants agreed to deprive him of his Eighth Amendment rights to be free from the alleged cruel and unusual punishment. Accordingly, this claim is without merit and will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B).

B. Warden Janicek

Plaintiff complains that Ferguson Unit Warden Janicek refused to investigate plaintiff's complaints against McMullen, thereby depriving plaintiff of an accurate record by which to process his claims in federal court.

To the extent that plaintiff claims that his constitutional rights were violated because Janicek denied his grievances or refused to take action on any correspondence related to plaintiff's claims against McMullen, his claims are without legal merit.  A civil rights plaintiff must establish a causal connection between the acts or omissions of the defendant and the resultant constitutional deprivation.  *Reimer v. Smith*, 663 F.2d 1316, 1323 (5th Cir. 1981).  This may be done by alleging either active participation by the defendant in the actions causing the deprivation of the plaintiff's constitutional rights or affirmative adoption by the defendant of policies, which were wrongful or illegal and which cause the constitutional deprivation.  *Wanger v. Bonnner*, 621 F.2d 675, 679 (5th Cir. 1980).  Theories of vicarious liability, such as *respondeat superior* cannot support a cause of action under section 1983.  *Thompson v. Steele*, 709 F.2d 381 (5th Cir. 1983).  Plaintiff has stated no facts to show that Janicek was involved in complaints that plaintiff raised in any grievance or in any act directed toward plaintiff by any other officer or inmate on the Ferguson Unit.

Plaintiff's claim that Janicek denied plaintiff access to the courts is also without merit.  Prisoners have a right of access to the courts; this access must be "adequate, effective, and meaningful."  *Bounds v. Smith*, 430 U.S. 817, 823 (1977).  "In its most obvious and formal manifestation, the right protects one's physical access to the courts."  *Crowder v. Sinyard*, 884 F.2d 804, 811 (5th Cir. 1989), *abrogated on other grounds by Horton v. California*, 496 U.S. 128 (1990).  To sustain a constitutional claim of denial of access to the courts, an inmate must show that he sustained an actual injury.  *Lewis v. Casey*, 518 U.S. 343, 351-52 (1996).  The injury requirement is not satisfied merely by any type of frustrated legal claim; rather, the injury must involve an attempt to pursue a challenge to the prisoner's confinement or a direct or indirect attack on his sentence.  *Id.* at 354.

9

At most, plaintiff's pleadings show that Janicek frustrated plaintiff's legal claims against McMullen because Janicek failed to make a record of McMullen's alleged abuse and a record of any TDCJ investigation for this court to review. (Docket Entry No.10, page 3). Plaintiff's pleadings do not show that Janicek in any way attempted to thwart plaintiff's ability to file a civil rights suit. Accordingly, plaintiff's claims against Warden Janicek are legally frivolous and subject to dismissal.

C. Lt. McMullen

Plaintiff states colorable claims against Lt. McMullen of retaliation and cruel and unusual punishment with respect to the tainted food, which resulted in psychological duress and physical illness. Therefore, the Court will retain these claims.

IV. CONCLUSION

Based on the forgoing, the Court ENTERS the following ORDERS:

1. Plaintiff's claims against defendants Thomas, Moore, Stansbury, and Janicek are DISMISSED with prejudice as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B).

2. Plaintiff's claims against defendant Lt. McMullen are RETAINED.

It is so ORDERED.

SIGNED at Houston, Texas, on this 1st day of November, 2006.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE