IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VANCE WALZIER, | } | |
| TDCJ-CID NO. 709706, | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | CIVIL ACTION NO. H-06-2361 |
| | } | |
| LT. MCMULLEN, *et al.*, | } | |
| Defendants. | } | |

<u>OPINION ON DISMISSAL</u>

Vance Walzier, a state inmate proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983, seeking injunctive relief and compensatory damages from defendants Janicek, Thomas, Moore, and Stansbury, and Lt. McMullen.  The Court dismissed his claims against all defendants except Lt. McMullen and ordered McMullen served with process.  Before Lt. McMullen filed a responsive pleading, plaintiff amended his complaint, raising claims against seven new defendants.  (Docket Entry No.23).  The Court found that plaintiff intended to incorporate his claims against Lt. McMullen into the newly amended complaint.  (Docket Entry No.34).  The Court also granted defendant McMullen's Motion for a Protective Order Pending Resolution of Qualified Immunity Defense and ordered plaintiff to file a reply to the defense.  (Docket Entry No. 47).  Plaintiff filed such reply along with an affidavit in support of the reply.  (Docket Entry No.50).  Shortly thereafter, McMullen filed a motion for summary judgment.  (Docket Entry No.51).  Plaintiff has filed a response to the motion.  (Docket Entry No.53).  For the reasons to follow, the Court will grant McMullen's motion for summary judgment and dismiss plaintiff's claims against all defendants.

1

# I. CLAIMS

Plaintiff alleges the following facts and contends that such facts gave rise to the claims now pending:  In September, 2003, while plaintiff was confined on the Ferguson Unit, Lt. McMullen had plaintiff locked in pre-hearing detention pending a disciplinary infraction for possession of a pack of cigarettes that McMullen had confiscated from one of his informants.[1] (Docket Entry No.10).  McMullen threatened to charge plaintiff with a disciplinary case if plaintiff refused to be his informant.  (*Id*.).  McMullen wanted plaintiff "to provide information to him concerning what officers were bringing in drugs and tobacco products and the inmates' names they were bringing them to or had relationships with."  (*Id*., page 4).  Plaintiff refused, and McMullen falsely accused plaintiff of possessing the cigarettes.  (*Id*.).  Plaintiff was convicted of the disciplinary offense.[2]  (*Id*.).  In October, 2003, plaintiff complained about McMullen's actions in a Step 1 grievance, which was returned to plaintiff on procedural grounds.[3]  (*Id*.).  Plaintiff claims that he later filed two grievances appealing the disciplinary conviction and that both were denied.  (*Id*.).

---

[1]  In his reply to McMullen's assertion of qualified immunity, plaintiff alleges that McMullen attempted to solicit information from him in July, 2003, after McMullen found cigarettes in the mop bucket of an informant. (Docket Entry No.50).

[2]  Plaintiff claims McMullen falsely testified at the disciplinary hearing that he took the cigarettes from plaintiff.  (Docket Entry No.50).

[3]  In Step 1 grievance 2004027167 dated October 10, 2003, plaintiff complained that Lt. McMullen, Sgt. Prosuk, and Warden Merchant placed him in pre-hearing detention to force him to snitch on another inmate about a pack of cigarettes.  (Docket Entry No.1, Attachment).  Plaintiff claimed that McMullen pulled him out of pre-hearing detention and placed him in the infirmary, where McMullen again tried to solicit information from plaintiff about the owner of the cigarettes.  (*Id*.).  The grievance was returned as inappropriate.  (*Id*.).  The Step 2 grievance dated October 15, 2003, complaining of the denial on technical grounds was either not filed or processed.  (Docket Entry No.12, pages 7-8).

Thereafter, McMullen told other inmates that plaintiff was his informant and that he "continually provides information to him concerning all of the inmate SSI orderlies and officers."[4] (Docket Entry No.1, Affidavit).  McMullen's rumor spread around the Ferguson Unit and other inmates began to mistreat plaintiff.  Eventually, plaintiff attempted to stab an inmate for stealing his house shoes, for which he received a disciplinary conviction.  (Docket Entries No.1, Affidavit; No.10).  As a result of this conviction, plaintiff was transferred to administrative segregation in March, 2004.  (*Id.*).

From March 2004, until March 2005, while plaintiff was incarcerated in administrative segregation, Lt. McMullen authorized officers to move plaintiff to different cells seven times.[5]  (Docket Entry No.1, Affidavit).  During each move, officers escorting plaintiff would inform inmates on the cell block that "an informant was being moved to the block."  (*Id.*).

---

[4]  Plaintiff claims that McMullen told inmate orderlies who had been fired from their jobs that plaintiff was the reason they were terminated.  (Docket Entry No.50).

[5]  Plaintiff claims that he thought his conflict with McMullen had subsided when he was transferred to administrative segregation until McMullen ordered officers to shuffle him to different cells and blocks.  (Docket Entry No.50).  Plaintiff alleges that McMullen would harass many gang members and inmate SSI orderlies and tell them that plaintiff was providing information to him.  (*Id.*).  He claims that McMullen placed plaintiff's names on letters, grievances, and other documents to protect the identity of his informants, and that McMullen kept such documents where subordinate officers and inmates could see them.  (*Id.*).  Plaintiff speculates that McMullen created a profile in plaintiff's TDCJ record that has followed him to every unit where he has been transferred.  (*Id.*).

During this time, plaintiff began to get sick after eating his meals and developed sores on his tongue and inner lips.  (*Id.*).  One night, he overheard two female officers, one of whom he speculates is Officer McBride, say that they hoped he would die.  (*Id.*).  Later, McBride would brag that she gave him "that sh-t" because he allegedly tried to set her up to get fired. (*Id.*).  Other officers and inmates would also brag that they had given him "that sh-t" because he had been snitching on them.  Plaintiff did not know most of these inmates.  Officer Glaze and another officer took plaintiff's personal letters and distributed them to other inmates while he showered.  (*Id.*).  Glaze would also brag that she gave plaintiff "that sh-t" meaning "Acquired Immunodeficiency Syndrome ("AIDS") or Hepatitis C ("HCV").  (*Id.*).  Plaintiff tried to tell the officers that he was not snitching on them but to no avail.  (*Id.*).  Plaintiff began to refuse all food trays, showers, and recreation.  (*Id.*).  He tried to see a psychologist and requested a transfer to another unit.  (*Id.*).

Plaintiff alleges that Ferguson Unit officers contaminated his food trays with an array of substances.   (Docket Entry No.10).   Plaintiff claims that Officers Glaze, McBride, Correthers and other officers bragged that they had given plaintiff HCV and AIDS by tainting his food trays with the bodily fluids from an infected inmate.  (*Id.*).  Officer McBride and other officers, who worked with her, accused plaintiff of giving up information on other officers and inmates.  Officer Correthers accused plaintiff of giving up information on Officer Sanders, who had been fired.  (*Id.*).  "All of the officers would exclaim that Plaintiff messed over many inmates and officers in the past through grievances [and] that they would now mess over Plaintiff."  (*Id.*). Plaintiff does not recall filing such grievances and explained to the officers on many occasions that another inmate must have filed the grievances and placed plaintiff's name on the documents. The officers did not believe plaintiff's explanation.  (*Id.*).  Officer Glaze told plaintiff that "Lt.

McMullen would not lie on me for nothing."  Plaintiff claims that Lt. McMullen is the only officer that he "has written a series of grievances against."  (*Id.*).  He indicates that he did not file a grievance against any of the Ferguson Unit officers while he was confined in administrative segregation because these were the same officers upon whom he had to rely to mail the grievances.  (*Id.*).

After he was transferred to the Gib Lewis Unit in March, 2005, plaintiff filed two grievances.  In Step 1 Grievance 2005166943, dated May 30, 2005, plaintiff complained that, while on the Ferguson Unit, he had been given contaminated food trays in retaliation for filing grievances against Lt. McMullen.  (Docket Entry No.1).  In a response dated July 7, 2005, Warden Davis indicated that plaintiff's complaints against Lt. McMullen had been investigated but the allegations could not be sustained.  (*Id.*).  He further indicated that "[f]urther investigation reveals that no record of grievances have been received in past grievance tracking system attached as part of this investigation."  (*Id.*).  In the Step 2 grievance, plaintiff complained that Lt. McMullen did not contaminate the food but that other officers did.  (*Id.*).  He also complained that Lt. McMullen retaliated against him for filing grievances against him before plaintiff was housed in administrative segregation.  (*Id.*).  Plaintiff alleged that McMullen had information put in plaintiff's file so that it appeared that plaintiff was "snitching" on inmates and officers. Plaintiff indicated that he filed separate grievances from his disciplinary conviction regarding the same.  (*Id.*).  An investigation found no evidence to substantiate plaintiff's claims.  (*Id.*).

From July to September, 2006, plaintiff was incarcerated in administrative segregation on the Connally Unit of TDCJ, where he alleges the following events took place:  In September, 2006, Officer Flores harassed him cell-side about filing grievances against Flores's co-workers on other units.  (Docket Entry No.23).  Flores also contaminated his food trays;

consequently, plaintiff became ill.  (*Id*.).  From July 2006 to September 2006, Officers Ramirez and Hernandez kicked plaintiff's cell door and called him a snitch.  (*Id*.).  They would contaminate his food trays and go cell to cell, telling other inmates that he was a snitch.  (*Id.*). Plaintiff became extremely ill and refused to eat.  (*Id*.).  Captain Garcia ignored and refused all of plaintiff's requests for protection from these officers.  He further refused to investigate and allowed the officers to continue working on the pod where plaintiff was located.  Garcia's reply to plaintiff's request was that plaintiff "should not have 'f--ked' over everyone on Ferguson." (*Id*.).

In November, 2006, plaintiff was transferred to the Clements Unit to undergo psychiatric treatment for aggressive mentally ill offenders.  (Docket Entry No.24).  He claims that he has received at least five food trays while on the Clements Unit, which have made him ill. (*Id*.). He has also been re-tested for HCV but the vials of his blood have been switched with another inmate's.  (*Id*.).

Plaintiff seeks punitive, compensatory, nominal damages on the following grounds:

1.   Lt. McMullen retaliated against plaintiff by spreading a rumor that plaintiff was an informant because plaintiff filed a series of grievances against him and refused to act as an informant;

2.   Because he labeled plaintiff a "snitch," Lt. McMullen exposed plaintiff to a hostile living environment via harassment and retaliation by subordinate officers and inmate orderlies on the Ferguson Unit in violation of the Eighth Amendment;

3.   Officers Glaze, McBride, and Correthers of the Ferguson Unit of TDCJ-CID labeled plaintiff a snitch and contaminated his food trays in retaliation for plaintiff filing grievances against other officers;

4.   Officers Hernandez, Ramirez, and Flores of the Connally Unit of TDCJ-CID labeled plaintiff a snitch and contaminated his food trays in

           retaliation for plaintiff filing grievances against officers on the Ferguson
Unit;

5.      Officer Flores interfered with plaintiff's medical prescription; and,

6.      Captain Garcia refused to investigate plaintiff's complaints against
Officers Flores, Ramirez, and Hernandez and failed to protect him from
these officers.

(Docket Entries No.1, No.10, No.23, No.24, No.50).

Defendant McMullen moves for summary judgment on grounds that he is entitled

to Eleventh Amendment immunity and qualified immunity on plaintiff's claim that he suffered

cruel and unusual punishment as a result of his food being contaminated with bodily fluids

infected with HCV and AIDS. (Docket Entry No.51). McMullen further claims that he did not

retaliate against plaintiff by creating a hostile environment that ultimately led to plaintiff being

infected with a virus from tainted food. (*Id.*).

## II. <u>STANDARD OF REVIEW</u>

To be entitled to summary judgment, the pleadings and summary judgment

evidence must show that there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law. Fed. R. Civ. P. 56©. The moving party bears the burden

of initially pointing out to the court the basis of the motion and identifying the portions of the

record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park,

Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to

show with 'significant probative evidence' that there exists a genuine issue of material fact."

*Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*,

18 F.3d 1285, 1295 (5th Cir. 1994)). The Court may grant summary judgment on any ground

supported by the record, even if the ground is not raised by the movant.  *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

## III. <u>DISCUSSION</u>

The Civil Rights Act of 1866 creates a private right of action for redressing the violation of federal law by those acting under color of state law.  42 U.S.C. § 1983; *Migra v.Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984).  Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights conferred elsewhere.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  To prevail on a section 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).  A section 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.  *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).  Thus for plaintiff to recover, he must show that the defendants deprived him a right guaranteed by the Constitution or the laws of the United States.  *See Daniels v. Williams*, 474 U.S. 327, 329-31 (1986).  Plaintiff must also prove that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference–not the result of mere negligence.  *See Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994).  The negligent deprivation of life, liberty, or property is not a constitutional violation.  *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995).  Moreover, to hold a defendant liable under section 1983, plaintiff must adduce facts demonstrating the defendant's participation in the alleged wrong.  *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992).

## A. Official Capacity

Defendant McMullen seeks summary judgment on plaintiff's claims against him in his official capacity on grounds that he is immune from such relief under the Eleventh Amendment.  (Docket Entry No.51).  The Eleventh Amendment bars a suit in federal court by a citizen of a state against his own state or against a state agency or department.  *Hughes v. Savell*, 902 F.2d 376, 377-78 (5th Cir. 1990).  Eleventh Amendment immunity has a jurisdictional effect; it deprives a federal court of jurisdiction to hear a suit against a state.  *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 342 (5th Cir. 1996).  This immunity extends to suits for monetary damages against state officials in their official capacity.  *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 609 n. 10 (2001) (holding "[o]nly States and state officers acting in their official capacity are immune from suits for damages in federal court").

Because plaintiff's claims against all defendants in their official capacities as employees of the State of Texas are barred by the Eleventh Amendment*; see Will v. Michigan Dept of State Police*, 491 U.S. 58, 71 (1989) (suit not against official but state office); *Oliver v. Scott*, 276 F.3d 736, 742, 742 n. 5 (5th Cir. 2002); the Court lacks jurisdiction to consider such claims.  Accordingly, all of plaintiff's claims for monetary damages against all defendants in their official capacity are subject to dismissal.

## B. Individual Capacity

### 1. Compensatory Damages

Defendant McMullen moves for summary judgment on plaintiff's claims against him in his individual capacity on the ground that plaintiff has not suffered a compensable

physical injury and therefore, cannot recover monetary damages on any emotional or mental injury from any alleged constitutional violation.  (Docket Entry No.51).  "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e); *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005) (holding that "[s]ection 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury").  Although plaintiff has alleged that he has contracted AIDS and HCV as a result of consuming food tainted with the bodily fluid of an infected inmate, plaintiff's medical records show that he has not tested positive for either disease.  (Docket Entry No.51, Exhibit A). Plaintiff presents no evidence to contravene the affidavit of defendant's expert regarding his medical record.  (*Id.*, Exhibit B).  Moreover, plaintiff indicates that he was informed that his tests were negative and that his medical records showed him to be healthy.  (Docket Entries No.1, Affidavit, No.10).  Accordingly, to the extent that plaintiff seeks compensatory damages from defendant McMullen or from any other named defendant on any of his claims against said defendants, such relief will be denied pursuant to 42 U.S.C. § 1997e(e).

## 2. Nominal and Punitive Damages

Plaintiff also seeks nominal and punitive damages.  (Docket Entry No.23).  A plaintiff may recover nominal damages when his constitutional rights have been violated but he is unable to prove actual injury; likewise, "'a punitive award may stand in the absence of actual damages where there has been a constitutional violation.'"  *Williams v. Kaufman County,* 352 F.3d 994, 1014-15 (5th Cir. 2003) (quoting *Louisiana ACORN Fair Housing, Inc. v. LeBlanc,*

211 F.3d 298, 302-03 (5th Cir. 2000)).  The physical injury requirement of 42 U.S.C. § 1997e(e) does not bar an inmate's recovery of nominal or punitive damages if his constitutional rights have been violated.  *Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007).

To warrant punitive damages, plaintiff must allege facts showing that defendants' conduct was egregious or reprehensible.  *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).  Punitive damages may be awarded in § 1983 cases when the defendant's conduct "is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights. . . . The latter standard requires recklessness in its subjective form, *i.e.*, a subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations."  *Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003).

## a. Retaliation

Plaintiff contends that he is entitled to nominal and punitive damages because correctional officers at the Ferguson and Connally Units of TDCJ-CID have retaliated against him for filing grievances against other officers by labeling him a snitch and contaminating his food trays with bodily fluids and toxic substances.  (Docket Entries No.1, No.10, No.23).  To state a valid claim for retaliation under section 1983, an inmate must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.  *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).  The inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997).  Instead, "[t]he inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'"  *Id.*  (citation omitted).

Finally, causation requires a showing that "but for the retaliatory motive the adverse action would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).

### 1. Lt. McMullen

Plaintiff alleges that Lt. McMullen retaliated against him by spreading a rumor that plaintiff was an informant because plaintiff filed a series of grievances against Lt. McMullen and because plaintiff refused to act as an informant.  (Docket Entries No.1, No.10).  As a result of the rumors, plaintiff claims that he was subject to verbal and physical abuse from other inmates and from other correctional officers, who served him contaminated food from which he was infected with HCV and AIDS.  (*Id.*).

Defendant McMullen does not deny that he spread a rumor that plaintiff was an informant, but claims that because plaintiff's medical records show that he has tested negative for both diseases, plaintiff fails to demonstrate a sequence of events that prove a retaliatory motive. (Docket Entry No.51).

### (a) Grievances

The law is well-established that prison officials may not retaliate against an inmate for using the grievance system.  *Jackson v. Cain*, 864 F.2d 1235, 1249 (5th Cir. 1989). Plaintiff alleges that he filed numerous grievances appealing the false disciplinary case for possession of contraband and submitted numerous complaints and grievances concerning McMullen's abuse of the disciplinary process to solicit information from him.  (Docket Entry No.53).  The record, however, does not show that plaintiff's grievances were processed[6] or that

---

[6]   Plaintiff's un-numbered Step 1 grievance filed in September, 2003, wherein he complained that he had been in prehearing detention since August 23, 2003, without being afforded a hearing in violation of TDCJ disciplinary rules, was returned because the issue was not grievable.  (Docket Entry No.12, pages 4-5).  Plaintiff's un-numbered Step 1 grievance filed October 10, 2003, complaining that Lt. McMullen, Sgt. Prosuk, and Warden

McMullen was even aware that plaintiff had filed such grievances.  Plaintiff's allegation that Officer Glaze told him that "McMullen would not lie" in response to his protestation that he did not file any grievances does not affirmatively show that McMullen spread rumors because plaintiff filed grievances against him.  Plaintiff, nevertheless, claims that Ferguson Unit correctional officers told him they gave him HCV and AIDS through tainted food because he "messed over" other officers in past grievances.  Plaintiff speculates that the "past grievances" these officers complain about must be those he filed against Lt. McMullen because plaintiff cannot recall filing any grievances against any other officer except the ones he filed against McMullen.  Such speculation is insufficient to show that McMullen spread rumors because of the grievances plaintiff filed against him.  Accordingly, plaintiff fails to show his entitlement to nominal or punitive damages on this claim.

(b) <u>Refusal to Act as Informant</u>

Prisoners have a constitutional right to be protected from violence while in custody.  *Gullatte v. Potts*, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 1981).  For this reason, the Court assumes, without deciding, that a prison official may not retaliate against an inmate for his refusal to participate in activities that would place his life in danger, *i.e.*, to act as an informant.  *See David v. Hill*, 401 F.Supp.2d 749, 756-757 (S.D. Tex. Nov. 16, 2005).

---

Merchant misused pre-hearing detention as a tool to solicit information from plaintiff about other inmates and officers, was also returned because the issue was not grievable.  (Docket No.1, Attachment).  Plaintiff's un-numbered Step 2 grievance dated October 15, 2003, complaining that the unit grievance coordinator refused to address the merits of plaintiff's first grievance, was not filed or processed.  (Docket Entry No.12, pages 7-8).  Plaintiff indicates that his Step 2 grievance challenging the disciplinary conviction that he received as a result of McMullen's allegedly false charge was returned by the grievance officer because the fifteen day limitation period had expired.  (Docket Entry No.12, page 10).  Plaintiff's 2005 grievance complaining of McMullen's alleged retaliation was not filed until plaintiff had been transferred off the Ferguson Unit to the Gib Lewis Unit.  (Docket Entry No.1).  The response to this grievance noted that the grievance tracking system showed no record of past grievances.  (*Id.*, attachment).

Plaintiff contends that Lt. McMullen solicited him to act as an informant in 2003. Plaintiff claims that when he refused to "snitch" on officers and offenders engaging in illegal trafficking of contraband, McMullen placed him in prehearing detention for an extended period and later transferred him to the infirmary, where he tried to persuade plaintiff to act as an informant.  When plaintiff refused, McMullen filed a false disciplinary report against him for possession of cigarettes.  Plaintiff indicates that his grievances with respect to this conviction were denied, and he proffers no evidence to show that such disciplinary conviction was invalidated, overruled, or expunged.  Therefore, he fails to show that the disciplinary conviction was based on false charges.

Plaintiff also contends that McMullen spread a rumor in retaliation for his refusal to act as an informant.  Plaintiff implies that such rumor caused another inmate to mistreat him, which led to a physical altercation and eventually, plaintiff's confinement in administrative segregation.  Plaintiff, however, concedes that he was placed in administrative segregation because he fought the inmate with a weapon after the inmate stole plaintiff's shoes.  (Docket Entry No.10).  He does not indicate that the inmate stole his shoes because McMullen told the inmate or anyone else that plaintiff was an informant.  Other than a general complaint of mistreatment, plaintiff states no facts to connect McMullen's alleged rumor to plaintiff's transfer to administrative segregation.

Plaintiff further contends that while he was incarcerated in administrative segregation, McMullen harassed inmate orderlies by telling them that plaintiff was providing information to him and that plaintiff was the reason that they had been fired from their jobs (Docket Entry No.50) and the reason they had been strip-searched.  (Docket Entry No.10). Plaintiff claims McMullen also told gang members that plaintiff was an informant.  (Docket

Entry No.50).  While plaintiff claims that such inmates complained to him about the snitching and bragged that they had given him "that sh-t," he does not allege that he suffered anything more than verbal abuse[7] from these inmates as a result of McMullen's harassment.  (Docket Entry No.10).

Next, plaintiff maintains that McMullen retaliated against him by authorizing plaintiff's transfer to seven different cells in administrative segregation.  Plaintiff claims that the officers who moved him to each location would tell inmates in the vicinity of the cell that plaintiff was a snitch.  Plaintiff, however, states no facts to connect the actions of these officers to McMullen's alleged retaliatory motive, *i.e.*, plaintiff's refusal to act as a snitch.  He states nothing that would show that because plaintiff refused to act as his informant, McMullen told these officers that plaintiff was an informant, that McMullen ordered plaintiff's transfer to each new cell, or that McMullen ordered the officers to announce that plaintiff was a snitch.

Plaintiff also maintains that Ferguson Unit correctional officers accused him of attempting to set them up to get fired and of "snitching" on other officers who were fired or disciplined, and for that reason they contaminated his food.  With the exception of Officer Glaze's open-ended statement that "McMullen would not lie," plaintiff states no facts that would indicate that McMullen told the officers that plaintiff attempted to get them or other officers fired or disciplined because plaintiff refused to act as his informant.

Plaintiff further maintains that McMullen placed plaintiff's name on letters, grievances, and other documents to protect the identity of informants and kept such documents

---

[7]    Plaintiff claims that he was told that a certain inmate who was known to have HCV and AIDS contaminated plaintiff's food with his bodily fluids.  Plaintiff does not claim that he saw the inmate contaminate his food.

where subordinate officers and inmates could see them.  (Docket Entry No.50).  Plaintiff claims that McMullen created a profile in plaintiff's TDCJ record that has followed plaintiff to every unit where he has been transferred.  (*Id.*).  Plaintiff, however, states no facts as to the nature and content of such documents, the dates of such documents and the location of such documents, that would support such claim.

Plaintiff's pleadings state only general allegations regarding the spread of the rumors and the verbal harassment, which plaintiff attributes to McMullen's rumor.  Coupled with a record showing no evidence that plaintiff ingested contaminated food or that he has acquired HCV or AIDS or any other disease from such food, plaintiff's pleadings fail to raise an issue of material fact with respect to the causation element of retaliation.  Therefore, plaintiff's retaliation claim must fail.  Accordingly, plaintiff is not entitled to nominal or punitive damages on this claim.

### 2. Other Correctional Officers

Plaintiff also complains that Officers Glaze, McBride, and Correthers on the Ferguson Unit labeled him a snitch in retaliation for plaintiff attempting to get them fired and for filing grievances against other officers and inmates.  Plaintiff contends these officers openly bragged that they contaminated his food trays with the spit, blood, and semen of an inmate allegedly infected with HCV and AIDS, which resulted in plaintiff becoming infected with HCV and AIDS.  (Docket Entries No.1, No.10, No.23).

Plaintiff further complains that Officers Hernandez, Ramirez, and Flores on the Connally Unit contaminated his food trays and labeled him a snitch in retaliation for plaintiff filing grievances against officers on other units.  (Docket Entry No.23).

16

In support of his claims, plaintiff submitted statements of two offenders on the Connally Unit.  (Docket Entry No.13).  One indicates that he noticed that plaintiff received different food than other offenders.  The offender states that he became mildly ill after eating plaintiff's food a few times although he did not report such sickness to the medical department.  He also indicates that he heard Officers Ramirez and Hernandez curse plaintiff and say that plaintiff is "going to learn his lesson for filing all those grievances on every unit and that he 'f--ks' over a lot of correctional officers so he is going to pay for it."  (*Id.*, Hesus Mikel).  Another inmate states that he heard plaintiff beating on the cell door alleging that officers had put something in his food that made him sick or they refused to give him a food tray at all.  (*Id.*, John Allums).  This inmate claims he saw officers put a special tray in plaintiff's food slot.  (*Id.*).

Evidence that plaintiff received special food or a special tray on the Connally Unit does not indicate that the food on such trays was contaminated.  Plaintiff notes that the medical department on the Connally Unit prescribed special food trays and extra sandwiches to help him gain weight.   (Docket Entry No.23).   In Step 1 Grievance Number 2007010359, plaintiff indicates that he has been prescribed hyperclonic diet snacks to help him gain weight.  (Docket Entry No.23, Attachment).  He also complains in the grievance that Officer Flores refused to bring him such snacks and that every grievance he files makes Connally officers retaliate against him by bringing him tainted food snacks and trays.  (*Id*).  Warden Morales responded that there was no evidence that his food was being tampered with or of retaliation.  (*Id.*).

Moreover, plaintiff has submitted no evidence that would contravene his medical records, which show that he does not suffer from HCV nor AIDS; nor has he submitted any evidence to contravene the opinion of defendants' medical expert that plaintiff's medical records do not show that he has actually ingested tainted food.  (Docket Entry No.51, Exhibit B).  By

17

plaintiff's own account, he was told by medical personnel on the Connally Unit that his medical "charts show that he is healthy." (Docket Entry No.10). Plaintiff also states that P.A. Stansbury told him to see a psychologist and not a physician anymore about his complaints. (*Id*.).

        Although plaintiff alleges that defendants threatened and harassed him as "pay-back" for filing past grievances, plaintiff states no facts to show that any of these officers actually served him a contaminated tray on any particular date. Plaintiff contends he cannot state specifics because "once an inmate is labeled as an informant in Ad. Seg. on any unit, all of his food trays will be polluted with something and officers on all shifts collaborate together." (Docket Entry No.10). Such contention is insufficient to support a claim under 42 U.S.C. § 1983. Without more, the verbal threats and name-calling by prison guards do not amount to a constitutional violation. *Robertson v. Plano City of Tex.*, 70 F.3d 21, 24 (5th Cir. 1995) (citation omitted).

        Plaintiff further claims that because correctional officers told inmates that he was a snitch, he has been in numerous physical altercations where he has had to defend himself from assaults by other inmates. (Docket Entry No.19). In support of such claim, plaintiff attached four disciplinary hearing reports from June, 2006, which show that while incarcerated on the Connally Unit, plaintiff was found guilty of assaulting an officer,[8] refusing to obey an order to move to a new cell, and two violations of fighting with another offender. (*Id*.). The hearing reports reflect no evidence that plaintiff engaged in such behavior and violated TDCJ rules as a result of any rumor spread by any officer. (*Id*.). Likewise, the grievances plaintiff attached to his amended complaint do not reflect that defendant was beaten or poisoned by inmates or other

---

    [8] The TDCJ officers named in the disciplinary reports are not defendants in this case.

officers as a result of rumors  spread by defendants.[9]   (Docket Entry No.23, attachments).

Likewise, plaintiff's affidavit in support of his amended complaint does not affirmatively show

that these defendants contaminated his food trays in retaliation for plaintiff's past grievances.

(Docket Entry No.24).

In summation, plaintiff's pleadings show nothing more than his belief that TDCJ

officers have contaminated his food and spread rumors about him because he filed grievances

against other TDCJ personnel on the Ferguson Unit.  Accordingly, plaintiff's claims of retaliation

against defendants Glaze, McBride, Correthers, Hernandez, Ramirez, and Flores are legally

frivolous.  Plaintiff is not entitled to nominal or punitive damages on these claims.

b. Eighth Amendment

Plaintiff alleges that Lt. McMullen exposed him to a serious risk of harm in

violation of the Eighth Amendment's prohibition against cruel and unusual punishment by

spreading a rumor that plaintiff was a snitch.  Plaintiff contends that such rumor created a hostile

environment, which gave rise to plaintiff contracting HCV and AIDS from tainted food served

by other correctional officers on the Ferguson Unit.   (Docket Entries No.1, No.10, No.23,

No.24).  "Courts have long recognized that being labeled a 'snitch' in the prison environment

can indeed pose a threat to an inmate's health and safety in violation of the Eighth Amendment."

*David*, 401 F.Supp.2d at 756 (citing *United States v. Henderson*, 565 F.2d 900, 905 (5th Cir.

1978) ("the life of a 'snitch' in a penitentiary is not very healthy") and cases from other circuits in

support of the same).  Because being labeled a snitch could place an inmate's life in danger, it

---

[9]   In one grievance, which was not written or processed on a TDCJ grievance form, plaintiff complains that his life is in danger because Sgt. Villareal harassed Hispanic gang members to create a hostile living environment, which will result in "different inmates and officers tampering with my food trays."  (Docket Entry No.23, Grievance dated 7-5-06).  Sgt. Villareal is not a defendant to this suit.

follows that he would have a protected liberty interest in not being labeled one.  Indeed, the Fifth Circuit has stated that, when officials are aware of a danger to an inmate's health and safety, such as when an inmate participates in an official prison investigation, it violates the constitutional prohibition against cruel and unusual punishment to fail to afford that inmate reasonable protection.  *Gullatte v. Potts*, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug.1981).

"[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).  " [T]he official must both be aware of facts from which the inference could be drawn and he must also draw the inference."  *Id*.  The courts have not concisely defined what prison conditions pose a "substantial risk of serious of serious harm"; the Fifth Circuit, however, has held that a court must consider whether society considers the risk "to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.  [The court] must consider the Eighth Amendment is intended to protect against both present and future dangers to inmates.  Prison authorities must protect not only against current threats, but also must guard against sufficiently imminent dangers that are likely to cause harm in the next week or month or year."  *Horton v. Cockrell*, 70 F.3d 397, 401 (5th Cir. 1995).

Lt. McMullen does not specifically deny that he told other officers and offenders that plaintiff was an informant.  Instead, McMullen moves for summary judgment on the ground that plaintiff has not shown that he suffered harm or a serious risk of harm as a result of the alleged rumor.  (Docket Entry No.50).  Plaintiff states no specific facts, dates, or injuries attributable to the consumption of a specific food tray that was contaminated by bodily fluids or toxic substances traceable to McMullen's alleged rumor and provides nothing to contravene his

medical record and the opinion of McMullen's expert.  In response to McMullen's motion for summary judgment, plaintiff argues that the negative test results do not show that "the symptoms and medical complications plaintiff was suffering did not stem from being fed an array of cleaning chemical agents along with the infected bodily fluids that could have damaged plaintiff's liver/kidney while also destroying the virus in the infected bodily fluids." (Docket Entry No.53).  Plaintiff further argues that Dr. Vincent's affidavit failed to address why plaintiff developed liver and kidney disease after his confinement in administrative segregation but for his ingestion of a toxic substance.  (*Id.*).  Such arguments fail to contravene evidence that plaintiff did not suffer a physical disease or injury as a result of contaminated food served by hostile officers.  Moreover, plaintiff's argument that he ingested cleaning products that could destroy HCV and AIDS is factually frivolous.

Furthermore, plaintiff's pleadings do not state specific instances in which McMullen harassed offenders or told officers that plaintiff was "snitching" on them.  At most, plaintiff's pleadings generally show that officers verbally harassed him because he filed unspecified grievances or complaints against them or their coworkers.  Although he alleges that he engaged in altercations with other inmates as a result of the hostile environment created by McMullen's rumor, the disciplinary reports and grievances attached to his pleadings do not support that allegation.  Moreover, the sworn declarations of inmates on the Connally and Clements Units of TDCJ show that plaintiff shared his contamination fears with other inmates, who were generally sympathetic and not openly hostile.

Plaintiff's pleadings therefore, do not support an Eighth Amendment cruel and unusual punishment claim.  Accordingly, he is not entitled to nominal or punitive damages on such claims.

c. Personal Involvement

Plaintiff claims that Connally Unit Captain Garcia refused to investigate plaintiff's complaints against Officers Flores, Ramirez, and Hernandez.  (Docket Entries No.23). Plaintiff, however, fails to state facts that would show that Captain Garcia was personally involved any alleged constitutional violation as required under 42 U.S.C. § 1983.  *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (holding personal involvement in alleged constitutional deprivation is an essential element of a civil rights cause of action).  Section 1983 does not create supervisory or *respondeat superior* liability.  *See Alton v. Texas A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999).  Individual officials may be liable only for implementing a policy that is "'itself a repudiation of constitutional rights' and 'the moving force of the constitutional violation.'"  *Oliver v. Scott,* 276 F.3d 736, 742 (5th Cir. 2002) (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985)).  Plaintiff's pleadings fail to identify specific policies or state specific facts to show that defendant Garcia implemented a policy with respect to the allegedly unconstitutional acts of any other defendant.

Plaintiff further states no facts to support his claim that Officer Flores interfered with plaintiff's medical prescription.  (Docket Entry No.23).  Accordingly, plaintiff is not entitled to any relief on his claims against Garcia and Flores.

IV. CONCLUSION

Based on the forgoing, the Court ENTERS the following ORDERS:

1.      Defendant Lt. Virgil McMullen's motion for summary judgment (Docket Entry No.51) is GRANTED.   Plaintiff's claims against defendant McMullen are DISMISSED with prejudice.

2.      Plaintiff's claims against defendants Glaze, McBride, Correthers, Hernandez, Ramirez, Flores, and Garcia are DISMISSED, with prejudice,

22

as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B).

3.  Plaintiff's civil rights complaint is DISMISSED WITH PREJUDICE.

4.  Plaintiff's motion for discovery (Docket Entry No.52) is DENIED, as moot.  Plaintiff indicates in his original pleading that he reviewed his medical records and he based his claims on specific findings attributable to such records.  (Docket Entries No.1, No.14).

5.  All other pending motions, if any, are DENIED.

SIGNED at Houston, Texas, this 13th day of March, 2008.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE

23